# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                                                ) Case No. 1:21-mj-706
THE CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER 513-658-4379 (AT&T, Inc.) )
                                                                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the    Southern    District of    Ohio   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession by a Prohibited Person; |
| 18 U.S.C. §922(u) | Theft of Firearms from a Federal Firearms Licensee. |

The application is based on these facts:
See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. See 18 U.S.C. 3122(b), 323(b).

☒ Continued on the attached sheet.

X Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA William Crayner, ATF&E
*Printed name and title*

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Oct 5, 2021**

Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

## AO 106   Attachment

      See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Bureau of Alcohol, Tobacco, Firearms & Explosives. *See* 18 U.S.C. §§ 3122(b), 3123(b).

      I declare under penalty of perjury that the foregoing is true and correct.


October 5, 2021  
DATE

*s/Ashley N. Brucato*  
ASHLEY N. BURCATO (0090989)  
Assistant United States Attorney

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (513) 658-4379, which does not list a subscriber (the "Target Cell Phone"), whose wireless service provider is AT&T, Inc., a company headquartered at 11760 US Highway 1, Ste 600, North Palm Beach, FL 33408. AT&T's Registered Agent is located at 350 N. St. Paul Street, Ste 2900, Dallas, TX 75201.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

1. *Historical and Subscriber Information.* To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time-period of **August 28, 2021 to present**:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);
        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        iii. Local and long distance telephone connection records;
        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        v. Length of service (including start date) and types of service utilized;
        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication – ie call detail records - and records of data events across all networks (3G, 4G, 5G)

        ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time-period **August 28, 2021 to present**. Included is any

       specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

  c. The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Bureau of Alcohol, Tobacco, Firearms & Explosives
> 550 Main Street, Ste 8-491
> Cincinnati, OH 45202
> Fax: 513-684-6359

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty (30) days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

   a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

   b. Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers;

   c. Identity of all accounts that are linked to the account by cookies;

   d. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

    e. IP addresses of any websites or other servers to which the cell phone device or devices connected

    f. Source and destination telephone numbers and email addresses

    g. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty (30) days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

4. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(g)(1), Possession by a Prohibited Person and 18 U.S.C. §922(u) – Theft of Firearms from a Federal Firearms Licensee.

2. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (513) 658-4379 (AT&T, INC.) | CASE NO.  1:21-mj-706<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, William Crayner, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(513) 658-4379** (the "**SUBJECT TELEPHONE**") whose service provider is AT&T, Inc. (hereinafter "AT&T"), a wireless provider headquartered at 11760 US Highway 1, Ste 600, North Palm Beach, FL 33408.  The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121- 3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since December 2018. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia. I also graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia, in June of 2019.

4. In my career with ATF, I have been assigned to the Cincinnati Field Office in the Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the United States Secret Service in Washington D.C. where I served as a member of the Uniformed Division under the Presidential Protective Division. I was employed in that capacity from July of 2010 to February of 2015. I was also a member of the Carmel Police Department in Carmel, IN from February 2015 to December of 2018. I was assigned to the Operations Division at the Carmel Police Department and took part in various criminal investigations during my tenure. I have received additional training in several areas of law enforcement, including but not limited to gang investigations, narcotics interdiction and investigation, and firearms interdiction and investigation. I am also a graduate of Purdue University where I received a bachelor's degree in Law and Society in 2008.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other police officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that David BRYERS has violated 18 U.S.C. § 922(g)(1), Possession by a Prohibited Person and 18 U.S.C. §922(u) – Theft of Firearms from a Federal Firearms Licensee. A federal grand jury

2

charged BRYERS with a violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. §922(u) on September 22, 2021 and BRYERS is the subject of a federal arrest warrant. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in locating BRYERS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. On May 30, 2020, at approximately 4:45 a.m., approximately six unidentified suspected black males conducted a burglary of Arms and Accessories, located at 3400 Harrison Avenue, Cincinnati, Ohio. Arms and Accessories is a Federal Firearm Licensee (FFL).

9. A review of the business's surveillance video revealed that six unidentified suspected black males arrived at Arms and Accessories from the north. The first suspect a black male, wearing a red colored "Sugar Hill" hoodie and light-colored shorts (hereinafter referred to as "SUSPECT 1"), is on video carrying a large piece of concrete. SUSPECT 1 walked up to the front door, looked around the door jam, and proceeded to ram the front door with the concrete. Once a hole was made in the security glass, SUSPECT 1 left the area on foot traveling northbound on North Bend Road. Another unknown black male, subsequently identified as BRYERS, was wearing a white t-shirt, black pants with another white shirt on top of his head. BRYERS made entry into the business through the hole generated from the concrete and entered the business. BRYERS immediately kicked a glass firearms display case located in front of him. The glass

3

display case broke and the firearms located in the case were then accessible. BRYERS gathered six (6) firearms from the top shelf of the display and handed them off to another unknown male, who was wearing a gray zipper "Nike" hooded sweatshirt and black pants (hereinafter referred to as "SUSPECT 3"), who was positioned outside of the front door. BRYERS exited the business through the same hole from which he made entry and both BRYERS and SUSPECT 3 left the area on foot traveling westbound on Harrison Avenue.

10. While BRYERS was entering and exiting the business, he is on video stabilizing himself with his hand on a glass display case near the front door. The Cheviot Police Department (CPD) along with the Green Township Police (GTPD) Department processed the crime scene. CPD officers recovered suspected blood from the broken glass display case inside of the store. The suspected blood sample was sent to the Hamilton County Coroners Lab for analysis, which confirmed BRYERS was the major DNA contributor to the blood sample.

11. On September 22, 2021, a federal Grand Jury in the Southern District of Ohio returned an Indictment charging David BREYERS with 18 U.S.C. § 922(u) – Theft of Firearms from a Federal Firearms Licensee and 18 U.S.C. § 922(g)(1) – Possession of Firearms by a Prohibited Person. I received an arrest warrant in case1:21-CR-101 filed through the United States District Court for the Southern District of Ohio.

12. On September 28, 2021, I attempted to locate BRYERS at a residence, 6403 Kennedy Avenue, Apt. 3, Cincinnati, OH 45213, where I had seen BRYERS in the past. I contacted the known lease holder, Shamika HEIDELBURG. HEIDELBURG stated that BRYERS was not inside of the apartment and consented to law enforcement searching her residence for BRYERS. BRYERS was not located within the apartment. I spoke with HEIDELBURG, and she stated that she and BRYERS had broken up and that he no longer lived with her. HEIDELBURG stated she

did not know where BRYERS was currently staying, nor did she have any methods of contacting him. I provided HEIDELBURG with my cell phone number in case she came across any information about BRYERS whereabouts.

13. On September 28, 2021, at 2:27 p.m., approximately eight hours after leaving HEIDELBURG's apartment, I received a phone call from **THE SUBJECT TELEPHONE** and a male identified himself as "David BRYERS." BRYERS asked me about my investigation and why I am looking for him. I asked BRYERS how he got my cell phone number and he stated that he got my cell phone number from the "clerk of courts."

14. BRYERS made arrangements with me to come to the federal building in downtown Cincinnati to speak about my investigation and that he would be available between 5:00 p.m. and 6:00 p.m. At approximately 5:00 p.m., BRYERS attorney contacted me and changed the arrangements to have BRYERS turn himself into law enforcement. BRYERS' attorney stated that BRYERS would be at the federal building at 9:00 a.m. on September 29, 2021.

15. BRYERS did not show up to the federal building as arranged and to this date he has not turned himself into law enforcement. I attempted to make contact with BRYERS on the **SUBJECT TELEPHONE,** but it was turned off and the voice mailbox had not been setup; therefore, I could not leave a voice message.

16. Based on my training and experience, I believe that BRYERS uses and previously used the **SUBJECT TELEPHONE** and the location information requested in ATTACHMENT B will assist law enforcement in locating BRYERS, a person to be arrested under Rule 41(c)(4).

17. Through training and experience, I know that individuals rely heavily in their day-to-day activities and actions on their cellular telephones and their communications. These communications, in the form of telephone calls, voice messages, SMS text messages and other like

communications cause their cellular telephone to emit and receive electronic signals to and from cellular telephone company cell towers. These electronic signals indicate and determine finitely the geographic location of the individual in possession of the specific cellular telephone emanating and receiving said electronic signals. This technique is routinely successful in locating an individual. Obtaining historical location information will establish frequent previous locations for BRYERS and will also assist law enforcement in locating where BRYERS may currently be located.

18. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine

6

the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that AT&T can collect historical and prospective cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers, such as AT&T, typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **SUBJECT TELEPHONE** outside of daytime hours.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
WILLIAM CRAYNER
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this __5th__ day of October, 2021

_____
Karen L. Litkovitz
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (513) 658-4379, which does not list a subscriber (the "Target Cell Phone"), whose wireless service provider is AT&T, Inc., a company headquartered at 11760 US Highway 1, Ste 600, North Palm Beach, FL 33408. AT&T's Registered Agent is located at 350 N. St. Paul Street, Ste 2900, Dallas, TX 75201.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

1. *Historical and Subscriber Information.* To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time-period of **August 28, 2021 to present**:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – ie call detail records - and records of data events across all networks (3G, 4G, 5G)

      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time-period **August 28, 2021 to present**. Included is any

        specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

  c. The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

        Bureau of Alcohol, Tobacco, Firearms & Explosives
        550 Main Street, Ste 8-491
        Cincinnati, OH 45202
        Fax: 513-684-6359

2. *Prospective Location Information.* The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty (30) days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information.* Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

  a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

  b. Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers;

  c. Identity of all accounts that are linked to the account by cookies;

  d. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

      e. IP addresses of any websites or other servers to which the cell phone device or devices connected

      f. Source and destination telephone numbers and email addresses

      g. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty (30) days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

4. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(g)(1), Possession by a Prohibited Person and 18 U.S.C. §922(u) – Theft of Firearms from a Federal Firearms Licensee.

2. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.